**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BANKERS INSURANCE COMPANY,<br>11101 Roosevelt Blvd. N<br>St. Petersburg, FL 33716<br><br>        Plaintiff,<br><br>    v.<br><br>PAUL HORTON,<br>3127 Martin Luther King Jr. Ave., SE<br>Washington, D.C. 20032<br><br>    and<br><br>HERMAN BARBER,<br>9602 Traverse Way<br>Fort Washington, MD 20744<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 15-213<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

COMES NOW, Bankers Insurance Company ("Bankers"), by its undersigned counsel, and for its Complaint against Defendants Paul Horton and Herman Barber (collectively "Defendants"), and states as follows:

**JURISDICTION**

1.　　This Court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity exists between the parties.

2.　　Venue is proper in this Court under 28 U.S.C. § 1391 because all Defendants are

subject to personal jurisdiction and a substantial part of the events giving rise to the claim occurred in the District of Columbia, in this judicial district.

3.      The claims for relief herein alleged are for breach of contract of indemnity, specific performance of the indemnity agreement, *quia timet* and injunctive relief, declaratory relief, and other equitable relief affecting property and involving persons within the jurisdiction of this Court.

## THE PARTIES

4.      Plaintiff Bankers is, and at all relevant times mentioned herein was, a corporation organized under the laws of the State of Florida, with its headquarters and principal place of business at 11101 Roosevelt Blvd. N., St. Petersburg, Florida 33716.  Bankers is engaged in the business of underwriting and issuing surety bonds for the construction industry.

5.      Bankers is informed, believes and thereon alleges that Defendant Paul Horton is the Chief Financial Officer and a Managing Member of Horton & Barber Construction Services LLC.  He is a resident of the District of Columbia and resides at 3127 Martin Luther King Jr. Avenue, SE, Washington, District of Columbia 20032.

6.      Upon information and belief, Defendant Herman Barber is the Chief Executive Officer and a Member of Horton & Barber Construction Services LLC.   He is a resident of the State of Maryland and resides at 9602 Traverse Way, Fort Washington, Maryland 20744.

## FACTS AND BACKGROUND

7.      Bankers hereby incorporates by reference Paragraphs 1 through 6 as though fully set forth herein.

8.      This case arises from Defendants' breach of a General Indemnity Agreement (the "Indemnity Agreement") executed by all parties.  As a result of Defendants' actions, Bankers has

2

incurred significant and direct costs currently in excess of $82,323.

9.      On or about January 3, 2012, Defendants accepted the terms, agreed to be bound by, and executed the Indemnity Agreement in favor of Bankers.  A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit A**, and is incorporated by reference herein.

10.     Defendants executed the Indemnity Agreement in exchange for, among other things, Bankers' issuance of surety bonds on behalf of Horton & Barber Construction Services LLC (hereinafter "Horton & Barber Construction"), at the request of Defendants, in connection with one or more construction projects awarded to Horton & Barber Construction within the District of Columbia.

11.     Defendant Paul Horton executed the Indemnity Agreement as a Managing Member on behalf of Horton & Barber Construction.  Defendant Herman Barber executed the Indemnity Agreement as a Member of Horton & Barber Construction.  Each Defendant also executed the Indemnity Agreement as an individual Indemnitor.

12.     Upon information and belief, Horton & Barber Construction voluntarily entered Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Maryland on October 31, 2014, Case No. 14-26864.

## Terms of the Indemnity Agreement

13.     Article II, section 2.1 of the Indemnity Agreement provides that the Defendants as individual Indemnitors agree to indemnify Bankers for all costs, losses, fees, and liabilities related to any bonds issued, including attorneys' fees:

> Indemnitor agrees to indemnify, defend, and hold Surety harmless from and against any and all demands, liabilities, costs, penalties, obligations, interest, damages and expenses of whatever nature or kind, including attorneys' fees (including both outside and in-house attorneys' fees) and all other expenses, including but not

limited to costs and fees incurred in investigation of claims or potential claims, adjustment of claims, procuring or attempting to procure the discharge of a Bond, or attempting to recover losses or expenses related to a Bond from the Surety, Principal or third parties, whether Surety shall have paid out any such sums or any part thereof or not.

14.     Further, Article III, section 3.12 of the Indemnity Agreement provides that an "[i]ndemnitor agrees to reimburse Surety for its expenses, premiums, interest, and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety."

15.     Article III, section 3.13 of the Indemnity Agreement additionally states that an "[i]ndemnitor agrees that Surety may recover its expenses and attorneys' fees incurred in any suit with, or in collecting any judgment obtained against, Indemnitor in any suit between Indemnitor and Surety under this agreement or otherwise."

16.     Article III, section 3.1 of the Indemnity Agreement further provides that upon demand Defendants must provide Bankers with collateral security:

If a claim or demand for performance of any obligation under any Bond is made against Surety, Indemnitor shall immediately upon demand deposit United States legal currency with Surety, as collateral security, in an amount equal to the reserves posted by Surety, and determined in Surety's sole discretion, with respect to such claim(s) or potential claim(s) plus the amount reserved for any expense or attorneys' fees.  Specific performance of this paragraph shall be a remedy available to Surety.

17.     Defendants are joint and severally liable to Bankers under the Indemnity Agreement, as provided for in Article III, Section 3.2 of the Indemnity Agreement, which states that "[i]ndemnitors' obligations under this Agreement are joint and several."

**The Bonded Projects**

18.     After the execution of the Indemnity Agreement, Defendants, through their company Horton & Barber Construction, entered into a construction service agreement with the

Government of the District of Columbia for a grouping of projects referred to as the "DC Alleyway Repairs Contract," contract numbers DCKA-2012-C-0053A and DCKA-2012-C-0053B (hereinafter "Bonded Projects").

19.     In connection with the Bonded Projects, and in reliance upon the Indemnity Agreement executed by Defendants, Bankers issued performance and payment bonds guaranteeing Horton & Barber Construction's performance under the Bonded Projects.  Claims were subsequently made against the payment bonds issued by Bankers. True and correct copies of the payment bonds are attached hereto as **Exhibit B**.

*The Chaney Enterprises Limited Partnership Litigation*

20.     On or about August 26, 2013, Bankers' registered agent in the District of Columbia was served with a Summons and Complaint from Chaney Enterprises Limited Partnership ("Chaney") in the Superior Court for the District of Columbia, Case No. 2013 CA 005759 C ("the Chaney Litigation"), seeking payment in the amount of $47,079.68 for labor and materials provided to Horton & Barber Construction in relation to the Bonded Projects.  Bankers was named a party as the surety for Horton & Barber Construction, in accordance with the payment bond issued by Bankers.

21.     Counsel for Bankers attempted to communicate with Defendants several times regarding the Chaney Litigation during the period of September through October 2013, including requests for a proposed payment plan by Horton & Barber Construction to Chaney.

22.     On or about September 25, 2013, Bankers, through counsel, sent separate letters to both Defendants that presented a formal demand for indemnification for any liability of Bankers to Chaney on the payment bond, and requested that Horton & Barber Construction immediately assist with evaluating the claim from Chaney by providing information and

documentation, including any offsets or back-charges.

23.    Neither Defendants nor any other agent of Horton & Barber Construction provided any defense to payment or information supporting the non-payment of Chaney's claim, or any information regarding a payment plan by Horton & Barber Construction.

24.    Subsequently, Bankers entered into negotiations with Chaney regarding the aforementioned Chaney Litigation.

25.    On or about August 6, 2014, Bankers and Chaney entered into a Release and Settlement Agreement ("the Chaney Release").  A true and correct copy of the Chaney Release is attached hereto as **Exhibit C**.

26.    The Chaney Release provided that Bankers pay Chaney the sum of $41,800, and in exchange Chaney would formally release Bankers from any liability or responsibility to Chaney under the payment bonds for the Bonded Projects, including any liability in the Chaney Litigation.

27.    The Chaney Release did not affect or alter Bankers' indemnity rights against Defendants.

28.    To date, neither Defendants nor Horton & Barber Construction have indemnified Bankers for the payment it made to Chaney per the terms of the Chaney Release and pursuant to the requirements of the Indemnity Agreement.

*The Aggregate Transport Corporation Bond Claim*

29.    On or about September 11, 2013, Defendant Paul Horton, on behalf of Horton & Barber Construction, received a Bond Claim Notice from Aggregate Transport Corporation ("Aggregate"), a supplier on the Bonded Projects. Aggregate also sent Bankers a copy of the Bond Claim Notice and stated that the letter served as a notice of a claim on "any payment bond

6

for the referenced Project" and referenced a payment bond number issued by Bankers.

30.     Aggregate claimed that Horton & Barber Construction was indebted to Aggregate in the amount of $20,636.65, for materials and delivery services Aggregate provided to Horton & Barber Construction within the District of Columbia in relation to the Bonded Projects.

31.     On or about October 2, 2013, Bankers through counsel sent separate letters to both Defendants that requested Horton & Barber Construction assist with evaluating the claim from Aggregate and presented a formal demand for indemnification for any liability to Aggregate on the payment bond.

32.     Shortly thereafter Bankers entered into negotiations with Aggregate, regarding Aggregate's claim against the payment bond issued by Bankers.

33.     On or about November 4, 2013, Aggregate executed a Full and Final Release, Receipt and Assignment Agreement (the "Aggregate Release").

34.     The Aggregate Release provided for Bankers to pay $19,636.65 to Aggregate, and for Aggregate to assign its claims against Horton & Barber Construction to Bankers.  Aggregate also agreed to forever discharge both Bankers and Horton & Barber Construction from all claims related to the Bonded Project, excepting the assignment to Bankers as set forth in the Aggregate Release, including Aggregate's September 11, 2013 claim on the payment bond.  A true and correct copy of the Aggregate Release is attached hereto as **Exhibit D**.

35.     The Aggregate Release did not affect or alter Bankers' indemnity rights against Defendants.

36.     To date, neither Defendants nor Horton & Barber Construction have indemnified Bankers for the payment it made to Aggregate per the terms of the Aggregate Release and pursuant to the requirements of the Indemnity Agreement.

7

**Further Losses Incurred by Bankers**

37.     Based upon the aforementioned defaults of Defendants and the demands made against the payment bonds provided by Bankers, Bankers has pursued its rights under the Indemnity Agreement to seek indemnification from the Defendants.

38.     Bankers has incurred and will continue to incur costs and expenses as a consequence of providing the payment bonds to Defendants and Defendants' failure to comply with the Indemnity Agreement.

39.     As of January 2015, Bankers has incurred approximately $20,987.81 in attorneys' fees and related costs for resolving the Aggregate claim and the Chaney Litigation, as well as in pursuing its rights under the Indemnity Agreement.

40.     Additionally, Bankers is continuing to incur attorney's fees and related costs in bringing this action to enforce the Indemnity Agreement.

41.     In light of the failure to pay subcontractors and/or suppliers, the poor financial outlook of Horton & Barber Construction, now in Chapter 11 Bankruptcy, and avoidance of both Defendants and Horton & Barber Construction's obligations to Bankers under the Indemnity Agreement, Bankers has reasonable grounds to anticipate Defendants will attempt to avoid indemnifying Bankers for the aforementioned losses on the payment bonds.

42.     Given the Defendants' lack of cooperation, a full accounting of all Defendants' assets is necessary for Bankers to investigate its loss exposure.

43.     Bankers has discharged its obligations under the payment bonds, has acted in conformity with the Indemnity Agreement, and has satisfied all conditions precedent to recovery in this action.

## COUNT I - BREACH OF CONTRACT OF INDEMNITY
### (Money Damages)

44.     Bankers hereby incorporates by reference Paragraphs 1 through 43 as though fully set forth herein.

45.     The Defendants executed a valid and enforceable indemnity contract, the purpose of which is to indemnify Bankers from all loss and expense in connection with any bonds issued by Bankers on behalf of Horton & Barber Construction.

46.     Bankers has discharged its obligations under the payment bonds, has acted in conformity with the Indemnity Agreement, and has satisfied all conditions precedent to recovery in this action.

47.     Defendants have defaulted under the terms and conditions of the Indemnity Agreement by failing to indemnify Bankers for its losses and related expenses on payment bonds issued for the Bonded Projects despite demands by Bankers.

48.     Article II, section 2.1 of the Indemnity Agreement requires Defendants to "indemnify, defend, and hold Surety harmless from and against any and all demands, liabilities, costs, penalties, obligations, interest, damages, and expenses of whatever nature or kind, including attorneys' fees . . . ."

49.     Article III, section 3.12 further provides that an "[i]ndemnitor agrees to reimburse Surety for its expenses, premiums, interest, and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety," and Article III, section 3.13 additionally states that an "[i]ndemnitor agrees that Surety may recover its expenses and attorneys' fees incurred in any suit with, or in collecting any judgment obtained against, Indemnitor in any suit between Indemnitor and Surety under this agreement or otherwise."

9

50.     To date, Bankers has incurred significant expenses for, among other things, investigating actual and potential payment bond claims and settling those claims, and pursuing its rights under the Indemnity Agreement, not including preparing and filing this Complaint.  As of the most recent accounting in January 2015 these total costs are in excess of $82,323. Defendants have failed to indemnify Bankers for any such expenses.

51.     Defendants have breached the Indemnity Agreement by failing to indemnify Bankers upon its demands for reimbursement of its actual costs associated with the claims against the payment bonds.

52.     In connection with Defendants' ongoing breach of the Indemnity Agreement, Bankers has incurred and continues to incur costs and damages as a result of the issuance of surety payment bonds to Defendants, and bringing this action to enforce the Indemnity Agreement.

53.     Defendants are jointly and severally liable to Bankers per Article III, Section 3.2 of the Indemnity Agreement.

WHEREFORE, Bankers respectfully requests that this Court enter judgment against Defendants jointly and severally, and in favor of Plaintiff Bankers, in the full amount of Bankers' damages as proven at trial, but not less than $61,436.65 in losses on the payment bonds for the Aggregate Release and the Chaney Release, plus associated costs and attorney's fees in the amount of $20,886.50 as a result of managing and resolving Bankers' liability on the payment bonds, for a total amount of $82,323.15 prior to this litigation, plus costs, interest, and attorneys' fees in relation to prosecuting this litigation, and grant such additional relief as this Court deems just and proper under the circumstances.

## COUNT II – BREACH OF CONTRACT
**(Specific Performance)**

54.     Bankers hereby incorporates by reference Paragraphs 1 through 53 as though fully set forth herein.

55.     The Defendants executed a valid and enforceable indemnity contract, the purpose of which is to indemnify Bankers from all loss and expense in connection with any bonds issued by Bankers on behalf of Horton & Barber Construction.

56.     Bankers has discharged its obligations under the payment bonds, has acted in conformity with the Indemnity Agreement, and has satisfied all conditions precedent to recovery in this action.

57.     Bankers has sought to exercise certain rights under the Indemnity Agreement resulting from the obligations owed by the Defendants to Bankers under the Indemnity Agreement, including to discharge Bankers from all liability incurred by reason of the issuance of any bond, and if such discharge is unattainable, to deposit collateral to cover all exposure under such bonds, including the payment bonds for the Bonded Projects.

58.     To date, and as detailed above, Defendants have failed to comply with their obligations under Article II, section 2.1 of the Indemnity Agreement, by failing to indemnify, defend or save Bankers harmless from any expenses and other costs related to the issuance of payment bonds to Horton & Barber Construction, despite formal demands by Bankers.

59.     Defendants have defaulted under the terms and conditions of the Indemnity Agreement by failing to indemnify Bankers for its losses and related expenses on payment bonds issued for the Bonded Projects despite demands by Bankers.

60.     Defendants have indicated by their conduct that they do not intend to satisfy

Bankers' rights under the Indemnity Agreement.

61.     Upon information and belief, the Defendants are capable of performing their obligations under the Indemnity Agreement, yet they have failed and/or refuse to do so and have damaged Bankers as a result.

62.     To date, Bankers faces losses and associated fees and costs related to the losses on the payment bonds issued to Defendants in an amount in excess of $82,323.

63.     Based upon Defendants' conduct to date, Bankers believes that Defendants will attempt to avoid their obligations to pay collateral and to indemnify, exonerate and save Bankers harmless under the terms and conditions of the Indemnity Agreement by transferring and conveying their assets to satisfy obligations other than those covered by the payment bonds or otherwise included within the scope of the Indemnity Agreement.

64.     As a result of Bankers' issuance of payment bonds in connection with the Indemnity Agreement and the Bonded Projects, Bankers became subject to claims, litigation, and actual liability to two payment bond claimants.

65.     As a result of Bankers' issuance of payment bonds in connection with the Indemnity Agreement and the Bonded Projects, Bankers has incurred substantial costs and damages arising from (i) investigating, defending, and resolving actual and potential payment bond claims; (ii) issuing settlement payments to subcontractors and/or suppliers on the Bonded Projects; and (iii) pursuing its rights under the Indemnity Agreement.

66.     Bankers is expending additional monies to enforce its rights under the Indemnity Agreement, including but not limited to court costs and attorneys' fees in this action, for which Defendants are also liable under the Indemnity Agreement.

67.     Bankers reasonably believes that Defendants will dispose of their assets

permanently and will thereby render themselves insolvent, to the prejudice and irreparable harm of Bankers, unless Defendants are (i) ordered to place Bankers in funds sufficient to discharge any and all claims made by persons on the payment bonds, and are (ii) immediately enjoined from transferring, conveying, or otherwise hiding their assets.

68.     Bankers currently estimates that its entire liability as a consequence of providing the payment bonds for Defendants and Defendants' breaches of the Indemnity Agreement will exceed the estimated more than $82,323 it has already incurred, due to Bankers having to bring this action.

69.     Bankers is entitled to the remedy of specific performance of the Indemnity Agreement, as it has no adequate remedy at law for the harm caused by the Defendants' failure to perform the obligations set forth in the Indemnity Agreement.  Bankers' remedy at law is inadequate, in that, among other things, its exposure to liability as a result of the Defendants' breaches of the Indemnity Agreement, is not fully liquidated at this time and Bankers' rights to immediate collateral security against future loss are in jeopardy of being permanently lost.

WHEREFORE, Bankers requests relief in the form of a judgment of specific performance and exoneration in its favor and against Defendants jointly and severally ordering Defendants to do the following:

A)     In accordance with the Indemnity Agreement, require Defendants to discharge Bankers from all liability incurred by reason of the issuance of any bond, and if such discharge is unattainable, to require Defendants to deposit collateral to cover all exposure under such bonds, through funds by money, property, or liens or security interests in property as determined by Bankers to be sufficient security to cover its loss arising out of the payment bonds on the Bonded Projects, in an amount to be determined at trial, but to date reasonably estimated to be at least

13

$82,323.15 as evidenced by Bankers' estimated current losses;

B)      Require Defendants to remit payment to Bankers in an amount to be proven at trial, plus interest and attorney's fees, as reimbursement for all costs, losses and damages incurred and monies expended by Bankers as a result of the payment bonds issued under the Indemnity Agreement prior to this litigation, to date estimated to be at least $82,323.15;

C)      Require Defendants to render to Bankers (i) a full and complete accounting of all assets owned by any of them or in which any of them have an expectation or other interest, including any outstanding claims, as well as an accounting of any outstanding payment obligations; and (ii) to provide Bankers access to all of Defendants' books, records, documents, credit records, and accounts for the purpose of examining and copying them, including any depositories in which funds of the Defendants may be deposited;

D)      Require Defendants to pay Bankers their further costs, losses and damages of whatsoever kind and nature, including legal costs, consultant fees, and attorney's fees, incurred in enforcing Bankers' rights under the Indemnity Agreement, including but not limited to bringing this action before this Court, and;

E)      Grant Bankers such further relief as this Court deems just and proper under the circumstances.

## COUNT III – *QUIA TIMET* AND INJUNCTIVE RELIEF

70.     Bankers hereby incorporates by reference Paragraphs 1 through 69 as though fully set forth herein.

71.     By the express provisions of the Indemnity Agreement and by virtue of the equitable doctrines of exoneration and *quia timet*, Defendants are required to post collateral security, and Bankers is entitled to be placed in funds or other collateral security upon demand,

14

for all losses and expenses to be incurred as a consequence of its issuance of the payment bonds on behalf of the Defendants pursuant to the Indemnity Agreement.

72.     Unless preliminary and continuing injunctive relief is granted, Bankers will not be adequately secured for any obligations that have arisen under such payment bonds as a result of demands and claims against the payment bonds, and as a result of Defendants' breach of the Indemnity Agreement in not indemnifying Bankers.

73.     To date, Defendants have failed to deposit collateral with Bankers in an amount sufficient to protect Bankers from any current or future claims, losses, fees, costs, and expenses under the payment bonds.

74.     Preliminary injunctive relief is necessary because unless injunctive relief is granted, Defendants may sell, transfer, dispose of, lien, secrete, or otherwise divert its assets from being used to discharge Defendants' obligations to exonerate and indemnify Bankers, all to the prejudice and irreparable harm of Bankers.

75.     If Defendants are not enjoined immediately from transferring their assets, the assets will be disposed of permanently and Defendants may render themselves insolvent, all to the prejudice and irreparable harm of Bankers.

76.     As a proximate result of Defendants' conduct, Bankers has been or will be irreparably damaged so long as Defendants are able to circumvent their obligations to Bankers under the Indemnity Agreement by transferring their assets beyond Bankers' reach.  Bankers' existing losses and exposure on the payment bonds is approximately $61,436.65, and associated costs and fees currently total $20,987.81, for a total amount of $82,323.15 prior to the costs of this litigation.

WHEREFORE, Bankers respectfully prays that the Court grant the following injunctive

relief:

    A)    Immediately issue a preliminary injunction which includes the following:

    1)    An order requiring Defendants to place Bankers in funds by money, property, or liens or security interests in property, as determined by Bankers to be ample security for its obligations under the payment bonds issued under the Indemnity Agreement, which exceeds $82,323, or, in the alternative, an order to deposit such funds for such purpose in the registry of the Court;

    2)    An order requiring Defendants to render to Bankers a full and complete accounting of all assets owned by them or in which they have an interest, as well as an accounting of any outstanding payment obligations.

    3)    An order enjoining and restraining Defendants from selling, transferring or otherwise disposing of or liening any personal property, including real property, and further enjoining and restraining Defendants from allowing their assets and property to be liened, unless and until Bankers shall be placed in funds as prayed for in subparagraph 1) above.

    4)    An order granting a lien upon all assets and property, including realty, personalty and finances, owned by the Defendants or in which Defendants have an interest. Such lien or liens shall secure Bankers against any loss that it may sustain or incur by virtue of having executed the payment bonds in reliance upon the Indemnity Agreement. Such liens are to remain in effect unless and until Bankers shall be placed in funds as prayed for in subparagraph 1) above.

    5)    An order enjoining and restraining Defendants from voluntarily placing or attempting to place their properties into receivership or voluntarily entering or attempting to enter into receivership proceedings.

B)      An order requiring Defendants to pay Bankers' costs and attorney's fees, currently estimated to be $20,987.81 before the filing of this pleading, and granting Bankers such further relief as the Court deems just and proper under the circumstances.

## COUNT IV – DECLARATORY JUDGMENT

77.     Bankers hereby incorporates by reference Paragraphs 1 through 76 as though fully set forth herein.

78.     As described above, Defendants executed a valid and enforceable indemnity contract, the purpose of which is to indemnify Bankers from all loss and expense in connection with any bonds issued by Bankers on behalf of Horton & Barber Construction.

79.     Bankers has discharged its obligations under the payment bonds, has acted in conformity with the Indemnity Agreement, and has satisfied all conditions precedent to recovery in this action.

80.     Defendants have defaulted under the terms and conditions of the Indemnity Agreement by failing to indemnify Bankers for its losses and related expenses on payment bonds issued for the Bonded Projects despite demands by Bankers.

81.     Defendants have indicated by their conduct that they do not intend to satisfy Bankers' rights under the Indemnity Agreement.

82.     Unless and until Defendants fully satisfy their obligations under the Indemnity Agreement, Bankers is entitled to all rights and remedies provided under the express and implied terms of their Indemnity Agreement.

83.     For these reasons, an actual case or controversy has arisen and exists between Bankers and Defendants regarding Bankers current rights to indemnification.  Therefore, Bankers seeks a judicial determination of the parties' respective rights and liabilities under the

Indemnity Agreement.

84.     Bankers' remedy at law is inadequate, as its exposure to liability as a result of Defendants' breaches of the Indemnity Agreement is not fully liquidated at this time and Bankers' rights to immediate collateral security against future loss are in jeopardy of being permanently lost.

WHEREFORE, Bankers respectfully requests that this Court grant Bankers a declaratory judgment stating that:

A) The Indemnity Agreement executed by Bankers and Defendants in favor of Bankers is a valid and enforceable contract;

B) The Defendants are in breach of the Indemnity Agreement;

C) The Defendants are required to comply with each and every obligation under the Indemnity Agreement, including the obligations to:

(1) deposit collateral security with Bankers upon demand in an amount equal to the reserves posted by Bankers;

(2) indemnify and exonerate Bankers for all losses, expenses, attorneys' fees and legal fees, including the fees and costs to litigate this action, and all other costs otherwise incurred by Bankers as a result of its issuance of the payment bonds to Horton & Barber Construction.

D) Bankers' has the right to immediately recover, from each Defendant, jointly and severally, collateral and any and all costs incurred by Bankers as a result of and pursuant to the Indemnity Agreement and any Bond issued for or on behalf of Defendants and Horton & Barber Construction;

E) Bankers is entitled to any other relief that the Court deems to be just and appropriate,

including such relief as may be necessary to effectuate its declaratory judgment.


DATED:        February 11, 2015

                          Respectfully submitted,


                          _/s/ Vivian Katsantonis_____
                          Vivian Katsantonis (D.C. Bar No. 432293)
                          WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
                          8405 Greensboro Drive, Suite 100
                          McLean, Virginia 22102
                          Tel: (703) 749-1000
                          Fax: (703) 893-8029
                          vkatsantonis@watttieder.com

                          *Attorney for Plaintiff Bankers Insurance Company*